Whyte, J.
delivered the opinion of the court.
This cause has been well argued, but the case itself lies within narrow bounds. The only question is, whether the property levied on was or was not the property of the execution debtor. The property levied on and in controversy between the parties, consists of two negro slaves, a woman named Charity, and her son Stephen, about two or three years of age, for the conversion of whom this suit is brought. The defendant claims title as purchaser under an execution sale, in which Francis M’Connel, (the father of plaintiffs, James M’Connell and Mrs. Allen,) was the debtor. The plaintiffs, who are infants, claim title by bill of sale from one Appison, under the following circumstances:' A Mr. Burk, who had a joint fund with Francis M’Connell, in the hands of the commissioners for- building the courthouse in Paris, gave the latter an order authorizing him to take three hun *344 dred dollars from this fund, and caused said Francis to do the same, and with this joint amount to make an appropriation for the benefit of the two infant plaintiffs, (M’Connell’s children.) This was complied with by said Francis, by the purchase of two slaves from one Acock, who made a bill of sale of them to the plaintiffs, and delivered it to John M’Connell, their brother, as trustee, for them. After this, said Francis becoming embarrassed in his affairs, obtained the consent of his said children, and their trustee, to have these negroes sold, under a promise to have Burk’s contributive part, in the '“purchase of them, laid out in other negro property for their benefit. This was accordingly done, the sale made, and the portion advanced originally by the said Francis, in their purchase, was paid to the creditors of said Francis in discharge so far of his debts; and the contri-butive part of said Burk laid out in the purchase of the negro woman Charity and her child, from Appison, as above stated.
Upon these facts, no property in the negroes Charity and her child, vested in Francis, the execution debtor. The legal title by the hill of sale from Appison is vested in the plaintiffs, the children of the said Francis. An execution in a court of law can only he noticed as having an operation on a legal right, which the execution debtor, the said Francis, never had in the said property. The true nature of the transaction must have been misconceived upon the trial below, and Francis M’Connell been considered the real proprietor of these negroes; and the different transactions detailed in the bill of exceptions viewed as a form assumed for the purpose of veiling a false right, and advancing a fraudulent claim, to the prejudice of the creditors of said Francis, in the subtraction of so much of his funds liable to the satisfaction of his debts.
No just ground is perceived upon which such a view is authorized to he taken in the present case. Cases *345 have occurred where parents are indebted, and in declining circumstances have attempted to save apart of their property for the benefit of their children, and perhaps the attempt so made, usually proving unsuccessful, is apt by anticipation, to prevent a due consideration being given to the case, talcing it for granted, that where the agency of the parent intervenes in the transaction? fraud of course must be present. This record warrants no such conclusion; the consideration .for the purchase of the negroes levied on, proceeded from Burlce, and was advanced by him; and whether that advancement was understood as a compensation' for services previously rendered, or as a benevolence, or gratuity from him, matters not; it was not a part of .the property of the father, nor did it move from him, either directly or circumstantially, it being proved that the part of the consideration of $,‘300 00 for the first purchase of negroes from Acock, was paid by the father from this gift of Burke, which was preserved at their sale, and appropriated to the use of the plaintiffs in and by the purchase from Appison, of the negroes in controversy. See the case of Childs vs. Derrick, at Knoxville, 1825. (a)
The verdict of the jury must be set .aside, and the judgment of the circuit court thereon reversed.
Judgment reversed.